## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, v. WALTER H. CHASE, APPELLANT.

*Indictment for bigamy — when the prisoner is estopped from denying the identity of the person he has married — prohibition against second marriage in a judgment for divorce — it is penal and has no extra-territorial effect.*

APPEAL by the defendant from a judgment in the above entitled criminal action, entered in the Court of General Sessions.

The defendant was indicted for the crime of bigamy. Upon the trial the prosecution proved, that the prisoner was duly married to Florence Adele Strong, at Alexander, Genesee county, in this State, on the 25th of December, 1867; that thereafter, and on the 22d of February, 1876, the appellant married the complainant Mary Sandford, in Springport, Michigan, and that the parties thereafter cohabited as man and wife; that subsequently, during the continuance of that marriage and the lifetime of his wife by such second marriage, the appellant married one Alice E. McElroy, in the city of New York on the 1st of October, 1881, which marriage was celebrated by the Rev. Dr. Collyer at his residence No. 137 East Thirty-

ninth street, upon a statement previously made to him by the appellant that he was a single man, resulting either from a divorce or the death of his former wife.

At the close of the evidence for the prosecution the appellant's counsel requested the court to instruct the jury to acquit, on the ground that there was not sufficient proof that the defendant was married to Alice E. McElroy, as charged in the indictment; and, second, that there was not sufficient proof that the person to whom the prisoner was married was the person named. The motion was denied and the defendant's counsel excepted.

The appellant then took the stand and testified that he was married to Florence Adele Strong, as already shown, and further that she was living on the 22d of February, 1876, and had always lived in this State up to within two years of the time of his examination on the trial to his knowledge. A series of questions was asked him on cross-examination which he declined to answer, upon the ground that such an act would tend to degrade, disgrace or criminate him. In response to the proof thus given on behalf of the appellant, the district-attorney put in evidence the record of the proceedings and judgment in an action for divorce on the ground of adultary, brought against the defendant by his wife Florence A., commenced in 1875 and concluded by a decree dated February 11, 1876, and which decree was in the usual form prohibiting the defendant from marrying again until his wife was actually dead.

The defendant's counsel objected to the introduction of this record upon the ground that it was incompetent, immaterial and irrelevant, and further, that the decree appeared to have been granted and the marriage annulled, because of the adultery of the defendant therein, and that he was by the decree forbidden to marry during the lifetime of the plaintiff, and his marriage during that period was declared to be void by the statute in the State; that there was no evidence in this case to the contrary, and therefore the presumption was that the law of Michigan was the same as that of the State of New York; that no person who had been convicted of that offense could marry during the lifetime of a former husband or wife; and that consequently the marriage between Mary Sandford and the defendant, on the 22d of February, 1876, in the State of Michigan, was void. The court overruled the defendant's

objection, and admitted the decree and the papers in evidence; to which ruling the defendant's counsel excepted.

The court at General Term said: "The objections to the manner of the proof and to the sufficiency of the evidence given to establish the identity of Alice E. McElroy were not well taken. The clergyman who performed the marriage ceremony, namely, Mr. Collyer, knew the appellant and had seen Mary Sandford with him in the west, and as his reputed wife, and he knew that she was not the person between whom and the appellant he was asked to perform the marriage ceremony. The woman who was brought to Mr. Collyer by the appellant answered the questions which are authorized by statute (3 R. S. [6th ed.], 148, 149) to be asked, and said that her name was Alice E. McElroy, and by such name she signed the certificate in conjunction with the appellant and in his presence. The examination of each of the parties was made in the presence of both, and as the ceremony is one authorized by law, and as he brought the woman to Mr. Collyer for the purpose of having the marriage celebrated, he must be regarded as representing her to be the person she described herself to be, and as indorsing or verifying her statements in this regard. The people should not be called upon in such a case to prove on such a subject more than was done herein, including the statement and conduct of the prisoner at the time of the marriage, to make out a *prima facie* case, and to throw upon him the burden of disproving the truth of the statement as to the name of the woman if he should be allowed the privilege of assuming it for such a purpose. No doubt is entertained, however, that he should under such circumstances as detailed be estopped from showing that the name given was not the proper one, inasmuch as it is the marriage with a person other than an existing wife which forms the gravamen of the charge, no matter what her name may be. The exaction of proof of identity as to name rests upon a rule of pleading, and requires proof that the name of the person, as alleged in the indictment, should be given, but when the accused is shown to have participated directly in a legal proceeding by which the name is to be ascertained and is pronounced, the evidence is given and the rule is satisfied. This should be the law and it is believed that it is. (*Rex* v. *Edwards*, Russell and Ryan's Crown Cases, p. 283.) In that case it was held that if the prisoner wrote down the names for pub-

lication of the bans, he would be precluded from showing that the woman was not known by the name he gave, and that she was not rightly described by the name in the indictment. This case is considered conclusive in principle and justice. "These views disposed of the objections relating to the questions of identity, and to the sufficiency of the evidence and the manner of giving it, introduced to establish the marriages charged against the appellant.

Notwithstanding this result, however, the appellant contends that the marriage with Mary Sandford was void because his former wife Florence Adele was living when it was contracted, and this although a divorce had been obtained, because the decree prohibited him from marrying again. The answer to both of these propositions is, that when the marriage took place between Mary Sandford and the appellant a divorce had been legally declared between him and his first wife, and that divorce, although it prohibited him from marrying again, had no force beyond the jurisdiction of the State. All doubt about the validity of such a marriage, entered into beyond the limits of the State, has been set at rest by a decision of the court of last report. (*Van Voorhis* v. *Brintnall* (86 N. Y., 22).

"It is not to be presumed either, that the law of the State of Michigan, where the marriage with Mary Sandford took place, is the same as that which prevails here. Whatever presumptions of this kind may exist they do not embrace penal statutes (*Harris* v. *White*, 81 N. Y., 544), and our statute is penal. (*Van Voorhis* v. *Brintnall, supra.*)

"There can be no doubt about the admissibility of the decree of divorce between the appellant and his first wife. It was in response to his proof of the marriage between him and her which he used as a shield, and which demonstrated that it had been dissolved. The propriety of admitting it under the circumstances cannot be questioned."

*John O. Mott*, for the appellant.

*A. J. Requier*, for the respondent.

Opinion by BRADY, P. J. ; DANIELS, J., concurred.

Present — BRADY, P. J., and DANIELS, J.

Judgment affirmed.